(Slip Opinion) OCTOBER TERM, 2009 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LEVIN, TAX COMMISSIONER OF OHIO *v.* COMMERCE ENERGY, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 09–223.   Argued March 22, 2010—Decided June 1, 2010

Historically, all Ohio natural gas consumers purchased gas from a local distribution company (LDC), the public utility serving their geographic area. Today, however, consumers in Ohio's major metropolitan areas can alternatively contract with independent marketers (IMs) that compete with LDCs for retail sales of natural gas. Respondents, mainly IMs offering to sell natural gas to Ohio consumers, sued petitioner Ohio Tax Commissioner (Commissioner) in federal court, alleging discriminatory taxation of IMs and their patrons in violation of the Commerce and Equal Protection Clauses. They sought declaratory and injunctive relief invalidating three tax exemptions Ohio grants exclusively to LDCs. The court initially held that respondents' suit was not blocked by the Tax Injunction Act (TIA), which prohibits lower federal courts from restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," 28 U. S. C. §1341. Nevertheless, the court dismissed the suit based on the more embracive comity doctrine, which restrains federal courts from entertaining claims that risk disrupting state tax administration, see *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100. The Sixth Circuit agreed with the District Court's TIA holding, but reversed the court's comity ruling, and remanded for adjudication of the merits. A footnote in *Hibbs* v. *Winn,* 542 U. S. 88, 107, n. 9, the Court of Appeals believed, foreclosed an expansive reading of this Court's comity precedents. The footnote stated that the Court "has relied upon 'principles of comity' to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax

collection." Respondents challenged only a few limited exemptions, the Sixth Circuit observed, therefore their success on the merits would not significantly intrude upon Ohio's administration of its tax system.

*Held:* Under the comity doctrine, a taxpayer's complaint of allegedly discriminatory state taxation, even when framed as a request to increase a competitor's tax burden, must proceed originally in state court. Pp. 5–17.

(a) The comity doctrine reflects a proper respect for the States and their institutions. *E.g., Fair Assessment*, 454 U. S., at 112. Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity. States rely chiefly on taxation to fund their governments' operations, therefore their tax-enforcement methods should not be interfered with absent strong cause. See *Dows* v. *Chicago*, 11 Wall. 108, 110. The TIA was enacted specifically to constrain the issuance of federal injunctions in state-tax cases, see *Fair Assessment*, 454 U. S., at 129, and is best understood as but a partial codification of the federal reluctance to interfere with state taxation, *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n*, 515 U. S. 582, 590. Pp. 5–8.

(b) *Hibbs* does not restrict comity's compass. Plaintiffs in *Hibbs* were Arizona taxpayers who challenged, as violative of the Establishment Clause, a tax credit that allegedly served to support parochial schools. Their federal-court suit for declaratory and injunctive relief did not implicate in any way their own tax liability, and the relief they sought would not deplete the State's treasury. Rejecting Arizona's plea that the TIA barred the suit, the Court found that the case was "not rationally distinguishable" from pathmarking civil-rights controversies in which federal courts had entertained challenges to state tax credits without conceiving of the TIA as a jurisdictional barrier. 542 U. S*.,* at 93–94, 110–112. The Court also dispatched Arizona's comity argument in the footnote that moved the Sixth Circuit here to reverse the District Court's comity-based dismissal. *Id.,* at 107, n. 9. Neither *Hibbs* nor any other decision of this Court, however, has considered the comity doctrine's application to cases of the kind presented here. Pp. 8–10.

(c) Respondents contend that state action "selects [them] out for discriminatory treatment by subjecting [them] to taxes not imposed on others of the same class." *Hillsborough* v. *Cromwell*, 326 U. S. 620, 623. When economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights, courts generally view constitutional challenges with the skepticism due respect for legislative choices demands. See, *e.g., Hodel* v. *Indiana*, 452 U. S. 314, 331–332. And "in taxation, even more than in

Syllabus

other fields, legislatures possess the greatest freedom in classification." *Madden* v. *Kentucky*, 309 U. S. 83, 88. Of key importance, when unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*. How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent. See, *e.g., Heckler* v. *Mathews*, 465 U. S. 728, 740. On finding unlawful discrimination, courts may attempt, within the bounds of their institutional competence, to implement what the legislature would have willed had it been apprised of the constitutional infirmity. *E.g., id.,* at 739, n. 5. With the State's legislative prerogative firmly in mind, this Court, upon finding impermissible discrimination in a State's tax measure, generally remands the case, leaving the interim remedial choice to state courts. See, *e.g., McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18, 39–40. If lower federal courts were to consider the merits of suits alleging uneven state tax burdens, however, recourse to state court for the interim remedial determination would be unavailable, for federal tribunals lack authority to remand to state court an action initiated in federal court. Federal judges, moreover, are bound by the TIA, which generally precludes relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design. These limitations on the remedial competence of lower federal courts counsel that they refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them. Pp. 10–13.

(d) Comity considerations warrant dismissal of respondents' suit. If Ohio's scheme is unconstitutional, the Ohio courts are better positioned to determine—unless and until the Ohio Legislature weighs in—how to comply with the mandate of equal treatment. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 817–818. The unelaborated comity footnote in *Hibbs* does not counsel otherwise. Hardly a run-of-the-mine tax case, *Hibbs* was essentially an attack on the allocation of state resources for allegedly unconstitutional purposes. Plaintiffs there were third parties whose own tax liability was not a relevant factor. Here, by contrast, the very premise of respondents' suit is that they are taxed differently from LDCs. The *Hibbs* footnote is most sensibly read to affirm that, just as that case was a poor fit under the TIA, so it was a poor fit for comity. Respondents' argument that this case is fit for federal-court adjudication because of the simplicity of the relief sought is unavailing. Even if their claims had merit, respondents would not be entitled to their preferred remedy. In *Hibbs*, however, if the District Court found the Arizona tax credit

impermissible under the Establishment Clause, only one remedy would redress the plaintiffs' grievance: invalidation of the tax credit at issue. Pp. 13–15.

(e) In sum, a confluence of factors in this case, absent in *Hibbs*, leads to the conclusion that the comity doctrine controls here. First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position. Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options. Individually, these considerations may not compel forbearance by federal district courts; in combination, however, they demand deference to the state adjudicative process. Pp. 15–16.

(f) The Sixth Circuit's concern that application of the comity doctrine here would render the TIA effectively superfluous overlooks Congress' aim, in enacting the TIA, to secure the comity doctrine against diminishment. Comity, moreover, is a prudential doctrine. "If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Ohio Bureau of Employment Servs.* v. *Hodory*, 431 U. S. 471, 480. P. 16.

(g) In light of the foregoing, the Court need not decide whether the TIA would itself block this suit. Pp. 16–17.

554 F. 3d 1094, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, BREYER, and SOTOMAYOR, JJ., joined. KENNEDY, J., filed a concurring opinion. THOMAS, J., filed an opinion concurring in the judgment, in which SCALIA, J., joined. ALITO, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–223

RICHARD A. LEVIN, TAX COMMISSIONER OF OHIO, PETITIONER *v.* COMMERCE ENERGY, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 1, 2010]

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents the question whether a federal district court may entertain a complaint of allegedly discriminatory state taxation, framed as a request to increase a commercial competitor's tax burden. Relevant to our inquiry is the Tax Injunction Act (TIA or Act), 28 U. S. C. §1341, which prohibits lower federal courts from restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration. See *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100 (1981). The comity doctrine, we hold, requires that a claim of the kind here presented proceed originally in state court. In so ruling, we distinguish *Hibbs* v. *Winn*, 542 U. S. 88 (2004), in which the Court held that neither the TIA nor the comity doctrine barred a federal district court from adjudicating an Establishment Clause challenge to a state tax credit that allegedly funneled public

funds to parochial schools.

## I

### A

Historically, all natural gas consumers in Ohio pur-chased gas from the public utility, known as a local distri-bution company (LDC), serving their geographic area. In addition to selling gas as a commodity, LDCs own and operate networks of distribution pipelines to transport and deliver gas to consumers. LDCs offer customers a single, bundled product comprising both gas and delivery.

Today, consumers in Ohio's major metropolitan areas can alternatively contract with an independent marketer (IM) that competes with LDCs for retail sales of natural gas. IMs do not own or operate distribution pipelines; they use LDCs' pipelines. When a customer goes with an IM, therefore, she purchases two "unbundled" products: gas (from the IM) and delivery (from the LDC).

Ohio treats LDCs and IMs differently for tax purposes. Relevant here, Ohio affords LDCs three tax exemptions that IMs do not receive. First, LDCs' natural gas sales are exempt from sales and use taxes. Ohio Rev. Code Ann. §5739.02(B)(7) (Lexis Supp. 2010); §§5739.021(E), .023(G), .026(F) (Lexis 2008); §§5741.02(C), .021(A), .022(A), .023(A) (Lexis 2008). LDCs owe instead a gross receipts excise tax, §5727.24, which is lower than the sales and use taxes IMs must collect. Second, LDCs are not subject to the commercial activities tax imposed on IMs' taxable gross receipts. §§5751.01(E)(2), .02 (Lexis Supp. 2010). Finally, Ohio law excludes inter-LDC natural gas sales from the gross receipts tax, which IMs must pay when they purchase gas from LDCs. §5727.33(B)(4) (Lexis 2008).

### B

Plaintiffs-respondents Commerce Energy, Inc., a Cali-

fornia corporation, and Interstate Gas Supply, Inc., an Ohio company, are IMs that market and sell natural gas to Ohio consumers. Plaintiff-respondent Gregory Slone is an Ohio citizen who has purchased natural gas from Interstate Gas Supply since 1999. Alleging discriminatory taxation of IMs and their patrons in violation of the Commerce and Equal Protection Clauses, Complaint ¶¶35–39, App. 11–13, respondents sued Richard A. Levin, Tax Commissioner of Ohio (Commissioner), in the U. S. District Court for the Southern District of Ohio. Invoking that court's federal-question jurisdiction under 28 U. S. C. §1331, Complaint ¶6, App. 3, respondents sought declaratory and injunctive relief invalidating the three tax exemptions LDCs enjoy and ordering the Commissioner to stop "recognizing and/or enforcing" the exemptions. *Id.*, at 20–21. Respondents named the Commissioner as sole defendant; they did not extend the litigation to include the LDCs whose tax burden their suit aimed to increase.[1]

The District Court granted the Commissioner's motion to dismiss the complaint. The TIA did not block the suit, the District Court initially held, because respondents, like the plaintiffs in *Hibbs*, were "third-parties challenging the constitutionality of [another's] tax benefit," and their requested relief "would not disrupt the flow of tax revenue" to the State. App. to Pet. for Cert. 24a.

Nevertheless, the District Court "decline[d] to exercise jurisdiction" as a matter of comity. *Id.,* at 32a. Ohio's Legislature, the District Court observed, chose to provide the challenged tax exemptions to LDCs. Respondents requested relief that would "requir[e] Ohio to collect taxes which its legislature has not seen fit to impose." *Ibid.*

--------

[1] In moving to dismiss the complaint, the Commissioner urged, *inter alia*, that the LDCs were parties necessary to a just adjudication. See Fed. Rule Civ. Proc. 19. Ruling for the Commissioner on comity grounds, the District Court did not reach the question whether the LDCs were indispensable parties. App. to Pet. for Cert. 21a, 32a–33a.

(internal quotation marks omitted). Such relief, the court said, would draw federal judges into "a particularly inappropriate involvement in a state's management of its fiscal operations." *Ibid.* (internal quotation marks omitted). A state court, the District Court recognized, could extend the exemptions to IMs, but the TIA proscribed this revenue-reducing relief in federal court. "Where there would be two possible remedies," the Court concluded, a federal court should not "impose its own judgment on the state legislature mandating which remedy is appropriate." *Ibid.*

The U. S. Court of Appeals for the Sixth Circuit reversed. 554 F. 3d 1094 (2009). While agreeing that the TIA did not bar respondents' suit, the Sixth Circuit rejected the District Court's comity ruling. A footnote in *Hibbs*, the Court of Appeals believed, foreclosed the District Court's "expansive reading" of this Court's comity precedents. 554 F. 3d, at 1098. The footnote stated that the Court "has relied upon 'principles of comity' to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Hibbs*, 542 U. S., at 107, n. 9 (citation omitted). A broad view of the comity cases, the Sixth Circuit feared, would render the TIA "effectively superfluous," and would *sub silentio* overrule a series of important cases" presenting challenges to state tax measures. 554 F. 3d, at 1099, 1102 (citing *Milliken* v. *Bradley*, 433 U. S. 267 (1977); *Mueller* v. *Allen*, 463 U. S. 388 (1983)); 554 F. 3d, at 1099–1100.

In so ruling, the Sixth Circuit agreed with the Seventh and Ninth Circuits, which had similarly read *Hibbs* to rein in the comity doctrine, see *Levy* v. *Pappas*, 510 F. 3d 755 (CA7 2007); *Wilbur* v. *Locke*, 423 F. 3d 1101 (CA9 2005), and it disagreed with the Fourth Circuit, which had concluded that *Hibbs* left comity doctrine untouched, see *DIRECTV, Inc.* v. *Tolson*, 513 F. 3d 119 (2008). Noting that respondents "challenge[d] only a few limited exemp-

tions," and satisfied, therefore, that "[respondents'] success would not significantly intrude upon traditional matters of state taxation," the Sixth Circuit remanded the case for adjudication of the merits. 554 F. 3d, at 1102.

After unsuccessfully moving for rehearing en banc, App. to Pet. for Cert. 1a–2a, the Commissioner petitioned for certiorari. By then, the First Circuit had joined the Sixth, Seventh, and Ninth Circuits in holding that *Hibbs* sharply limited the scope of the comity bar. *Coors Brewing Co.* v. *Méndez-Torres*, 562 F. 3d 3 (2009). We granted the Commissioner's petition, 558 U. S. \_\_\_ (2009), to resolve the disagreement among the Circuits.

## II
### A

Comity considerations, the Commissioner dominantly urges, preclude the exercise of lower federal-court adjudicatory authority over this controversy, given that an adequate state-court forum is available to hear and decide respondents' constitutional claims. We agree.

The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The doctrine reflects

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Fair Assessment*, 454 U. S., at 112 (quoting *Younger* v. *Harris*, 401 U. S. 37, 44 (1971)).

Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity. For "[i]t is upon taxation that the several States chiefly rely to obtain the

means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Dows* v. *Chicago*, 11 Wall. 108, 110 (1871).

"An examination of [our] decisions," this Court wrote more than a century ago, "shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [us] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Boise Artesian Hot & Cold Water Co.* v. *Boise City*, 213 U. S. 276, 282 (1909). Accord *Matthews* v. *Rodgers*, 284 U. S. 521, 525–526 (1932) (So long as the state remedy was "plain, adequate, and complete," the "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.").[2]

------

[2] Justice Brennan cogently explained, in practical terms, "the special reasons justifying the policy of federal noninterference with state tax collection":

"The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules.  State tax agencies are organized to discharge their responsibilities in accordance with the state procedures.  If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law.  During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.  Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts."  *Perez* v.

Statutes conferring federal jurisdiction, we have repeatedly cautioned, should be read with sensitivity to "federal-state relations" and "wise judicial administration." *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 716 (1996) (internal quotation marks omitted). But by 1937, in state tax cases, the federal courts had moved in a different direction: they "had become free and easy with injunctions." *Fair Assessment*, 454 U. S., at 129 (Brennan, J., concurring in judgment) (internal quotation marks omitted).[3] Congress passed the TIA to reverse this trend. *Id.,* at 109–110 (opinion of the Court).

Our post-Act decisions, however, confirm the continuing sway of comity considerations, independent of the Act. Plaintiffs in *Great Lakes Dredge & Dock Co.* v. *Huffman*, 319 U. S. 293 (1943), for example, sought a federal judgment declaring Louisiana's unemployment compensation tax unconstitutional. Writing six years after the TIA's passage, we emphasized the Act's animating concerns: A "federal court of equity," we reminded, "may in an appropriate case refuse to give its special protection to private rights when the exercise of its jurisdiction would be prejudicial to the public interest, [and] should stay its hand in the public interest when it reasonably appears that private interests will not suffer." *Id.,* at 297–298 (citations omitted). In enacting the TIA, we noted, "Congress recog-

_____

*Ledesma*, 401 U. S. 82, 128, n. 17 (1971) (opinion concurring in part and dissenting in part).

[3] Two features of federal equity practice accounted for the courts' willingness to grant injunctive relief. First, the Court had held that, although "equity jurisdiction does not lie where there exists an adequate legal remedy[,] . . . the 'adequate legal remedy' must be one cognizable *in federal court*." *Fair Assessment*, 454 U. S., at 129, n. 15 (Brennan, J., concurring in judgment) (emphasis in original). Second, federal courts, "construing strictly the requirement that the remedy available at law be 'plain, adequate and complete,' had frequently concluded that the procedures provided by the State were not adequate." *Ibid.* (citation omitted).

nized and gave sanction to this practice." *Id.,* at 298. We could not have thought Congress intended to cabin the comity doctrine, for we went on to instruct dismissal in *Great Lakes* on comity grounds without deciding whether the Act reached declaratory judgment actions. *Id.,* at 299, 301–302.[4]

Decades later, in *Fair Assessment*, we ruled, based on comity concerns, that 42 U. S. C. §1983 does not permit federal courts to award damages in state taxation cases when state law provides an adequate remedy. 454 U. S., at 116. We clarified in *Fair Assessment* that "the principle of comity which predated the Act was not restricted by its passage." *Id.,* at 110. And in *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n,* 515 U. S. 582, 590 (1995), we said, explicitly, that "the [TIA] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation."

## B

Although our precedents affirm that the comity doctrine is more embracive than the TIA, several Courts of Appeals, including the Sixth Circuit in the instant case, have comprehended *Hibbs* to restrict comity's compass. See *supra*, at 4–5. *Hibbs*, however, has a more modest reach.

Plaintiffs in *Hibbs* were Arizona taxpayers who challenged a state law authorizing tax credits for payments to organizations that disbursed scholarship grants to children attending private schools. 542 U. S., at 94–96. These organizations could fund attendance at institutions that provided religious instruction or gave admissions preference on the basis of religious affiliation. *Id.,* at 95. Ranking the credit program as state subsidization of religion, incompatible with the Establishment Clause,

---

[4] We later held that the Act indeed does proscribe suits for declaratory relief that would thwart state tax collection. *California* v. *Grace Brethren Church,* 457 U. S. 393, 411 (1982).

plaintiffs sought declaratory and injunctive relief and an order requiring the organizations to pay sums still in their possession into the State's general fund. *Id.,* at 96.

The Director of Arizona's Department of Revenue sought to escape suit in federal court by invoking the TIA. We held that the litigation fell outside the TIA's governance. Our prior decisions holding suits blocked by the TIA, we noted, were tied to the Act's "state-revenue-protective moorings." *Id.,* at 106. The Act, we explained, "restrain[ed] state taxpayers from instituting federal actions to contest their [own] liability for state taxes," *id.,* at 108, suits that, if successful, would deplete state coffers. But "third parties" like the *Hibbs* plaintiffs, we concluded, were not impeded by the TIA "from pursuing constitutional challenges to tax benefits in a federal forum." *Ibid.* The case, we stressed, was "not rationally distinguishable" from a procession of pathmarking civil-rights controversies in which federal courts had entertained challenges to state tax credits without conceiving of the TIA as a jurisdictional barrier. *Id.,* at 93–94, 110–112. See, *e.g., Griffin* v. *School Bd. of Prince Edward Cty.*, 377 U. S. 218 (1964) (involving, *inter alia*, tax credits for contributions to private segregated schools).

Arizona's Revenue Director also invoked comity as cause for dismissing the action. We dispatched the Director's comity argument in a spare footnote that moved the Sixth Circuit here to reverse the District Court's comity-based dismissal. As earlier set out, see *supra*, at 4, the footnote stated: "[T]his Court has relied upon 'principles of comity' to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." 542 U. S., at 107, n. 9 (citation omitted) (citing *Fair Assessment*, 454 U. S., at 107–108; *Great Lakes*, 319 U. S., at 296–299).

Relying heavily on our footnote in *Hibbs*, respondents urge that "comity should no more bar this action than it

did the action in *Hibbs*." Brief for Respondents 42. As we explain below, however, the two cases differ markedly in ways bearing on the comity calculus. We have had no prior occasion to consider, under the comity doctrine, a taxpayer's complaint about allegedly discriminatory state taxation framed as a request to increase a competitor's tax burden. Now squarely presented with the question, we hold that comity precludes the exercise of original federal-court jurisdiction in cases of the kind presented here.

## III

### A

Respondents complain that they are taxed unevenly in comparison to LDCs and their customers. Under either an equal protection or dormant Commerce Clause theory, respondents' root objection is the same: State action, respondents contend, "selects [them] out for discriminatory treatment by subjecting [them] to taxes not imposed on others of the same class." *Hillsborough* v. *Cromwell*, 326 U. S. 620, 623 (1946) (equal protection); see *Dennis* v. *Higgins*, 498 U. S. 439, 447–448 (1991) (dormant Commerce Clause).

When economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights,[5] courts generally view constitutional challenges with the skepticism due respect for legislative choices demands. See, *e.g., Hodel* v. *Indiana*, 452 U. S. 314, 331–332 (1981); *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U. S. 483, 488–489 (1955). And "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Madden* v. *Kentucky*,

---

[5] Cf., *e.g., Loving* v. *Virginia*, 388 U. S. 1 (1967); *United States* v. *Virginia*, 518 U. S. 515 (1996). On the federal courts' role in safeguarding human rights, see, *e.g., Zwickler* v. *Koota*, 389 U. S. 241, 245–248 (1967); *McNeese* v. *Board of Ed. for Community Unit School Dist. 187*, 373 U. S. 668, 672–674, and n. 6 (1963).

309 U. S. 83, 88 (1940).

Of key importance, when unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*. How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent. See *Heckler* v. *Mathews*, 465 U. S. 728, 740 (1984) ("[W]hen the right invoked is that to equal treatment, the appropriate remedy is a *mandate* of equal treatment, a result that can be accomplished" in more than one way. (quoting *Iowa-Des Moines Nat. Bank* v. *Bennett*, 284 U. S. 239, 247 (1931); internal quotation marks omitted)).

On finding unlawful discrimination, we have affirmed, courts may attempt, within the bounds of their institutional competence, to implement what the legislature would have willed had it been apprised of the constitutional infirmity. *Mathews*, 465 U. S., at 739, n. 5; *Califano* v. *Westcott*, 443 U. S. 76, 92–93 (1979); see *Stanton* v. *Stanton*, 421 U. S. 7, 17–18 (1975) (how State eliminates unconstitutional discrimination "plainly is an issue of state law"); cf. *United States* v. *Booker*, 543 U. S. 220, 246 (2005) ("legislative intent" determines cure for constitutional violation). The relief the complaining party requests does not circumscribe this inquiry. See *Westcott*, 443 U. S., at 96, n. 2 (Powell, J., concurring in part and dissenting in part) ("This issue should turn on the intent of [the legislature], not the interests of the parties."). With the State's legislative prerogative firmly in mind, this Court, upon finding impermissible discrimination in a State's allocation of benefits or burdens, generally remands the case, leaving the remedial choice in the hands of state authorities. See, *e.g., Wengler* v. *Druggists Mut. Ins. Co.*, 446 U. S. 142, 152–153 (1980); *Orr* v. *Orr*, 440 U. S. 268, 283–284 (1979); *Stanton*, 421 U. S., at 17–18; *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U. S. 535,

543 (1942). But see, *e.g., Levy* v. *Louisiana*, 391 U. S. 68 (1968).

In particular, when this Court—on review of a state high court's decision—finds a tax measure constitutionally infirm, "it has been our practice," for reasons of "federal-state comity," "to abstain from deciding the remedial effects of such a holding." *American Trucking Assns., Inc.* v. *Smith*, 496 U. S. 167, 176 (1990) (plurality opinion).[6] A "State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination." *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18, 39–40 (1990). Our remand leaves the interim solution in state-court hands, subject to subsequent definitive disposition by the State's legislature.

If lower federal courts were to give audience to the merits of suits alleging uneven state tax burdens, however, recourse to state court for the interim remedial determination would be unavailable. That is so because federal tribunals lack authority to remand to the state court system an action initiated in federal court. Federal judges, moreover, are bound by the TIA; absent certain exceptions, see, *e.g., Department of Employment* v. *United States*, 385 U. S. 355, 357–358 (1966), the Act precludes relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design.[7] These limitations on the remedial compe-

––––––––––

[6] See, *e.g., Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 100–102 (1993); *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18, 51–52 (1990); *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 818 (1989); *American Trucking Assns., Inc.* v. *Scheiner*, 483 U. S. 266, 297–298 (1987); *Tyler Pipe Industries, Inc.* v. *Washington State Dept. of Revenue*, 483 U. S. 232, 252–253 (1987); *Bacchus Imports, Ltd.* v. *Dias*, 468 U. S. 263, 276–277 (1984); *Exxon Corp.* v. *Eagerton*, 462 U. S. 176, 196–197 (1983); *Louis K. Liggett Co.* v. *Lee*, 288 U. S. 517, 540–541 (1933).

[7] State courts also have greater leeway to avoid constitutional hold-

tence of lower federal courts counsel that they refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them.[8]

## B

Comity considerations, as the District Court determined, warrant dismissal of respondents' suit. Assuming, *arguendo*, that respondents could prevail on the merits of the suit,[9] the most obvious way to achieve parity would be to reduce respondents' tax liability. Respondents did not seek such relief, for the TIA stands in the way of any decree that would "enjoin . . . collection of [a] tax under State law." 28 U. S. C. §1341.[10] A more ambitious solution would reshape the relevant provisions of Ohio's tax code. Were a federal court to essay such relief, however, the court would engage in the very interference in state taxation the comity doctrine aims to avoid. Cf. *State Railroad Tax Cases*, 92 U. S. 575, 614–615 (1876). Respondents' requested remedy, an order invalidating the exemptions enjoyed by LDCs, App. 20–21, may be far from

—————

ings by adopting "narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests." *Moore* v. *Sims*, 442 U. S. 415, 429–430 (1979).

[8] Any substantial federal question, of course, "could be reviewed when the case [comes to this Court] through the hierarchy of state courts." *McNeese*, 373 U. S., at 673.

[9] But see *General Motors Corp.* v. *Tracy*, 519 U. S. 278, 279–280 (1997) (determining, at a time IMs could not compete with LDCs for the Ohio residential "captive" market, that IMs and LDCs were not "similarly situated"; and rejecting industrial IM customer's dormant Commerce Clause and equal protection challenges to LDCs' exemption from sales and use taxes).

[10] Previous language restricting the district courts' "jurisdiction" was removed in the 1948 revision of Title 28. Compare 28 U. S. C. §41(1) (1940 ed.) with §1341, 62 Stat. 932. This Court and others have continued to regard the Act as jurisdictional. See, *e.g., post*, at 1 (THOMAS, J., concurring in judgment).

what the Ohio Legislature would have willed. See *supra*, at 11. In short, if the Ohio scheme is indeed unconstitutional, surely the Ohio courts are better positioned to determine—unless and until the Ohio Legislature weighs in—how to comply with the mandate of equal treatment. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 817–818 (1989).[11]

As earlier noted, our unelaborated footnote on comity in *Hibbs*, see *supra*, at 9, led the Sixth Circuit to conclude that we had diminished the force of that doctrine and made it inapplicable here. We intended no such consequential ruling. *Hibbs* was hardly a run-of-the-mine tax case. It was essentially an attack on the allocation of state resources for allegedly unconstitutional purposes. In *Hibbs*, the charge was state aid in alleged violation of the Establishment Clause; in other cases of the same genre, the attack was on state allocations to maintain racially segregated schools. See *Hibbs*, 542 U. S., at 93–94, 110–112. The plaintiffs in *Hibbs* were outsiders to the tax expenditure, "third parties" whose own tax liability was not a relevant factor. In this case, by contrast, the very premise of respondents' suit is that they are taxed differently from LDCs. Unlike the *Hibbs* plaintiffs, respondents do object to their own tax situation, measured by the allegedly more favorable treatment accorded LDCs.

*Hibbs* held that the TIA did not preclude a federal challenge by a third party who objected to a tax credit received

---

[11] Respondents note that "[o]nce the district court grants the minimal relief requested—to disallow the exemptions—it will be up to the Ohio General Assembly to balance its own interests and determine how best to recast the tax laws, within constitutional restraints." Brief for Respondents 41. But the legislature may not be convened on the spot, and the blunt interim relief respondents ask the District Court to decree "may [immediately] derange the operations of government, and thereby cause serious detriment to the public." *Dows* v. *Chicago*, 11 Wall. 108, 110 (1871).

by others, but in no way objected to her own liability under any revenue-raising tax provision. In context, we clarify, the *Hibbs* footnote comment on comity is most sensibly read to affirm that, just as the case was a poor fit under the TIA, so it was a poor fit for comity. The Court, in other words, did not deploy the footnote to recast the comity doctrine; it intended the note to convey only that the Establishment Clause-grounded case cleared both the TIA and comity hurdles.

Respondents steadfastly maintain that this case is fit for federal-court adjudication because of the simplicity of the relief they seek, *i.e.,* invalidation of exemptions accorded the LDCs. But as we just explained, even if respondents' Commerce Clause and equal protection claims had merit, respondents would have no entitlement to their preferred remedy. See *supra*, at 11. In *Hibbs*, however, if the District Court found the Arizona tax credit impermissible under the Establishment Clause, only one remedy would redress the plaintiffs' grievance: invalidation of the credit, which inevitably would increase the State's tax receipts. Notably, redress in state court similarly would be limited to an order ending the allegedly impermissible state support for parochial schools.[12] Because state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy by permitting the *Hibbs* suit to proceed in a federal forum.

Comity, in sum, serves to ensure that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere

———————

[12] No refund suit (or other taxpayer mechanism) was open to the plaintiffs in *Hibbs*, who were financially disinterested "third parties"; they did not, therefore, improperly bypass any state procedure. Respondents here, however, could have asserted their federal rights by seeking a reduction in their tax bill in an Ohio refund suit.

with the legitimate activities of the States." *Younger*, 401 U. S., at 44. A confluence of factors in this case, absent in *Hibbs*, leads us to conclude that the comity doctrine controls here. First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position. Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options. Individually, these considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process.

## C

The Sixth Circuit expressed concern that application of the comity doctrine here would render the TIA "effectively superfluous." 554 F. 3d, at 1099; see *id.,* at 1102. This concern overlooks Congress' point in enacting the TIA. The Act was passed to plug two large loopholes courts had opened in applying the comity doctrine. See *supra*, at 7, and n. 3. By closing these loopholes, Congress secured the doctrine against diminishment. Comity, we further note, is a prudential doctrine. "If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Ohio Bureau of Employment Servs.* v. *Hodory*, 431 U. S. 471, 480 (1977).

## IV

Because we conclude that the comity doctrine justifies dismissal of respondents' federal-court action, we need not decide whether the TIA would itself block the suit. See *Great Lakes*, 319 U. S., at 299, 301 (reserving judgment on TIA's application where comity precluded suit). See also *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U. S. 422, 431 (2007) (federal court has flexibility to choose among threshold grounds for dismissal).[13]

\* \* \*

For the reasons stated, the Sixth Circuit's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[13] The District Court and Court of Appeals concluded that our decision in *Hibbs* placed the controversy outside the TIA's domain. That conclusion, we note, bears reassessment in light of this opinion's discussion of the significant differences between *Hibbs* and this case.

# SUPREME COURT OF THE UNITED STATES

─────────────

No. 09–223

─────────────

## RICHARD A. LEVIN, TAX COMMISSIONER OF OHIO, PETITIONER *v.* COMMERCE ENERGY, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 1, 2010]

JUSTICE KENNEDY, concurring.

The Court's rationale in *Hibbs* v. *Winn*, 542 U. S. 88 (2004), seems to me still doubtful. Nothing in the Court's opinion today expands *Hibbs*' holding further, however, and on that understanding I join the opinion of the Court.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–223

_____

RICHARD A. LEVIN, TAX COMMISSIONER OF OHIO, PETITIONER *v.* COMMERCE ENERGY, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 1, 2010]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, concurring in the judgment.

Although I, too, remain skeptical of the Court's decision in *Hibbs* v. *Winn*, 542 U. S. 88 (2004), see *ante*, at 1 (KENNEDY, J., concurring), I agree that it is not necessary for us to revisit that decision to hold that this case belongs in state court. As the Court rightly concludes, *Hibbs* permits not just the application of comity principles to the litigation here, but also application of the Tax Injunction Act (TIA or Act), 28 U. S. C. §1341. See *ante*, at 17. I concur only in the judgment because where, as here, the same analysis supports both jurisdictional and nonjurisdictional grounds for dismissal (the TIA imposes a jurisdictional bar, see, *e.g.*, *Hibbs*, *supra*, at 104), the "proper course" under our precedents is to dismiss for lack of jurisdiction. *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U. S. 422, 435 (2007).

Congress enacted the TIA's prohibition on federal jurisdiction over certain cases involving state tax issues because federal courts had proved unable to exercise jurisdiction over such cases in the restrained manner that comity requires. See *ante*, at 7. As the Court explains, Congress' decision to prohibit federal jurisdiction over cases within the Act's scope did not disturb that jurisdiction, or the comity principles that guide its exercise, in

cases outside the Act's purview. See *ante,* at 7−8; 12−17. I therefore agree with the Court that nothing in the Act or in *Hibbs* affects the application of comity principles to cases not covered by the Act. I disagree that this conclusion moots the need for us to decide "whether the TIA would itself block th[is] suit." *Ante*, at 16.

The Court posits that because comity is available as a ground for dismissal even where the Act is not, the Act's application to this case is irrelevant if comity would also support sending the case to state court. See *ante,* at 16−17. The Court rests this analysis on our recent holding in *Sinochem* that a court *may* dismiss a case on a nonmerits ground such as comity without first resolving an accompanying jurisdictional issue. See *ante*, at 16−17 (citing 549 U. S., at 425). The Court's reliance on *Sinochem* is misplaced, however, because it confuses the fact that a court *may* do that with whether, and when, it *should.* As *Sinochem* itself explains, courts should *not* dismiss cases on nonjurisdictional grounds where "jurisdiction . . . 'involve[s] no arduous inquiry'" and deciding it would not substantially undermine "judicial economy." 549 U. S., at 436 (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 587−588 (1999)). In such circumstances, *Sinochem* reiterates the settled rule that "the proper course" is to dismiss for lack of jurisdiction. 549 U. S., at 436. That is the proper course here.

The TIA prohibits federal courts from exercising jurisdiction over any action that would "suspend or restrain the assessment, levy or collection of [a] tax under State law." §1341. As the Court appears to agree, see *ante*, at 17, n. 13, this is such a case even under the crabbed construction of the Act in *Hibbs*, which the Court accurately describes as holding only that the Act does "not preclude a federal challenge by a third party who object[s] to a tax credit received by others, but in no way object[s] to her own liability under any revenue-raising tax provision,"

*ante*, at 14−15 (emphasizing that the "plaintiffs in *Hibbs* were outsiders to the tax expenditure, 'third parties' whose own tax liability was not a relevant factor"). This is not such a case, because the respondents here are in no sense "outsiders" to the revenue-raising state-tax regime they ask the federal courts to restrain. *Ibid.;* see also *Hibbs*, *supra*, at 104. Respondents compete with entities who receive tax exemptions under that regime in providing services whose cost is affected by the exemptions. Respondents thus *do* object to their own liability in a very real and economically significant way: The liability the state tax regime imposes on them but not on their competitors makes it more difficult for respondents to match or beat their competitors' prices. The fact that they raise this objection through the expedient of contesting their competitors' exemptions is plainly not enough to qualify them as *Hibbs*-like "outsiders" to the state revenue-raising scheme they wish to enjoin. If it were, application of the Act's jurisdictional bar would depend on little more than a pleading game. The Act would bar a federal suit challenging a state tax scheme that requires the challenger to pay more taxes than his competitor if the challenger styles the suit as an objection to his own tax liability, but would not bar the suit if he styles it as an objection to the competitor's exemption.

Because the Court appears to agree that even *Hibbs* does not endorse such a narrow view of the Act's jurisdictional bar, see *ante*, at 14−15, 17, n. 13, the "proper course" is to dismiss this suit under the statute and not reach the comity principles that the Court correctly holds independently support the same result, *Sinochem*, *supra*, at 436. Here, unlike in *Sinochem*, there is no economy to deciding the case on the nonjurisdictional ground: The same analysis that supports dismissal for comity reasons subjects this case to the Act's jurisdictional prohibition, even as construed in *Hibbs*. Compare *ante*, at 5–17, with

*Sinochem*, *supra*, at 435–436 (approving dismissal of a suit on *forum non conveniens* grounds because dismissal on personal jurisdiction grounds would have required the "expense and delay" of a minitrial on forum contacts). Given this, I see only one explanation for the Court's decision to dismiss on a "prudential" ground (comity), *ante,* at 16−17, rather than a mandatory one (jurisdiction): The Court wishes to leave the door open to doing in future cases what it did in *Hibbs*, namely, retain federal jurisdiction over constitutional claims that the Court simply does not believe Congress should have entrusted to state judges under the Act, see 542 U. S., at 113–128 (KENNEDY, J., dissenting).

That is not a legitimate approach to this important area of the law, see *ibid.*, and the Court's assertion that our civil rights precedents require it does not withstand scrutiny. If it is indeed true (which it may have been in the civil rights cases) that federal jurisdiction is necessary to ensure a fair forum in which to litigate an allegedly unconstitutional state tax scheme, the Act itself permits federal courts to retain jurisdiction on the ground that "a plain, speedy and efficient remedy" cannot be had in state court. §1341. But where, as here and in *Hibbs*, such a remedy can be had in state court, the Court should apply the Act as written. See 542 U. S., at 113–128 (KENNEDY, J., dissenting).

Because I believe the Act forbids the approach to federal jurisdiction over state tax issues that the Court adopted in *Hibbs*, I would not decide this case in a way that leaves the door open to it even if the Court could find a doorstop that accords with, rather than upends, the settled principle that judges presented with multiple nonmerits grounds for dismissal should dismiss on jurisdictional grounds first. But the tension the Court's decision creates with this settled principle should be enough to convince even those who do not share my view of the TIA that the

THOMAS, J., concurring in judgment

proper course here is to dismiss this case for lack of juris-diction because *Hibbs'* construction of the Act applies at most to the type of true third-party suit that *Hibbs* de-scribes, and thus does not save this case from the statute's jurisdictional bar.

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–223

———————

## RICHARD A. LEVIN, TAX COMMISSIONER OF OHIO, PETITIONER *v.* COMMERCE ENERGY, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 1, 2010]

JUSTICE ALITO, concurring in the judgment.

I agree with the Court that principles of comity bar the present action. I am doubtful about the Court's efforts to distinguish *Hibbs* v. *Winn*, 542 U. S. 88 (2004), but whether today's holding undermines *Hibbs*' foundations is a question that can be left for another day.