FILED
United States Court of Appeals
Tenth Circuit

July 31, 2020

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

LANDOWNERS UNITED ADVOCACY
FOUNDATION, INC.,

      Plaintiff - Appellant,

v.

LU CORDOVA,[1] in her official capacity as
Executive Director of the Colorado
Department of Revenue; MARCIA
WATERS, individually and in her official
capacity as Director of Colorado Division
of Real Estate; MARK WESTON,[2]
individually; PETER ERICSON,[3]
individually; MICHAEL S. HARTMAN,
individually,

      Defendants - Appellees.

No. 19-1126
(D.C. No. 1:16-CV-00603-PAB-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McKAY**[**], and **EID**, Circuit Judges.

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43, Executive Director Lu Cordova was substituted for former Executive Director Michael Hartman in his official capacity.

[2] Mark Weston is no longer named in his official capacity because he retired as the Program Manager for the Conservation Easement Program.

[3] Peter Ericson is no longer named in his official capacity because he is no longer a member of the Colorado Conservation Easement Oversight Commission.

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The late Honorable Monroe G. McKay heard oral argument in this appeal. Judge McKay died before the Order and Judgment in this case was finalized, and he cast no vote. "The practice of this court permits the remaining two panel judges if in

The plaintiff-appellee, Landowners United Advocacy Foundation ("LUAF"), is a non-profit organization claiming that Colorado's conservation easement tax credit program violated the constitutional rights of its members. The district court dismissed LUAF's complaint for lack of subject matter jurisdiction, holding that LUAF's claims were barred by the Tax Injunction Act ("TIA"). We affirm.

## I.

Colorado taxpayers may be entitled to a state income tax credit for donating a conservation easement[4] to a governmental entity or charitable organization. Colo. Rev. Stat. § 39-22-522(2). To qualify for the tax credit, a taxpayer's conservation easement donation must meet strict statutory requirements and the conservation easement must be accurately valued. *Id.* (incorporating 26 U.S.C. § 170(h) of the internal revenue code). Taxpayers who claim these tax credits are eligible to receive a dollar-for-dollar reduction in Colorado income taxes owed.

Colorado's conservation easement tax credit program began in 2000. Since then, multiple iterations of the statutory system have governed the program's administration. LUAF's allegations relate solely to the pre-2014 statutory system.

---

agreement to act as a quorum in resolving the appeal." *United States v. Wiles*, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); *see also* 28 U.S.C. § 46(d) (noting that the circuit court may adopt procedures permitting disposition of an appeal where a remaining quorum of a panel agrees on the disposition). The remaining panel members have acted as a quorum on this Order and Judgment.

[4] A conservation easement is a permanent restriction that runs with the land for the purpose of protecting and preserving the land in a predominantly natural, scenic, or open condition. Colo. Rev. Stat. §§ 38-30.5-102, 38-30.5-103.

For conservation easements donated before 2014, there was no pre-approval process. Colo. Rev. Stat. § 39-22-522(3.5)(a)(I). This meant that taxpayers would have to donate their conservation easement without a guarantee that their tax credit claim would be accepted. Consequently, some taxpayers donated their conservation easement and later discovered that they were not entitled to a tax benefit.

LUAF is a Colorado non-profit organization that seeks to protect landowners' rights. Many of LUAF's members have had their conservation easement tax credits challenged under the pre-2014 tax-credit-approval procedures. On behalf of these affected members, LUAF asserted the following four claims against Colorado state officials: (1) deprivation of equal protection, (2) violation of due process, (3) violation of the Fifth Amendment Takings Clause, and (4) a request for declaratory relief.

The district court dismissed LUAF's complaint for lack of subject matter jurisdiction, holding that LUAF's claims were barred by the TIA. We conclude that the district court lacked subject matter jurisdiction because of both the TIA and principles of comity.

## II.

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *Baca v. Colo. Dep't of State*, 935 F.3d 887, 905 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper." *Id.*

Enacted by Congress in 1937, the TIA "expressly [] restrict[s] the jurisdiction of the district courts of the United States over suits relating to the collection of State

3

taxes." *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (quotations omitted). It provides that federal "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA prevents district courts from providing both injunctive and declaratory relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).

Additionally, the comity doctrine, which the Supreme Court has described as "more embracive than the TIA, . . . restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010). Taxpayers bringing such claims for relief "must seek protection of their federal rights by state remedies, provided . . . that those remedies are plain, adequate, and complete." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) ("[The TIA], and the decisions of this Court which preceded it, reflect the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation.").

### III.

The district court's dismissal of LUAF's claims for lack of jurisdiction is supported by both the TIA and principles of comity.

### A.

To determine whether the TIA requires dismissal for lack of subject matter jurisdiction, federal courts must first determine whether the plaintiff seeks to "enjoin,

4

suspend or restrain the assessment, levy or collection" of any state tax. *Hibbs*, 542 U.S. at 99. If that is the relief sought, the court must determine whether the state's courts provide a "plain, speedy and efficient" remedy. *Hill v. Kemp*, 478 F.3d 1236, 1246 (10th Cir. 2007). If they do, the federal court must dismiss the claim for lack of jurisdiction. *Id.* Here, LUAF's claims fall within the TIA's jurisdictional bar.

First, LUAF seeks declaratory and injunctive relief that would enjoin or restrain Colorado's "assessment, levy, or collection" of taxes. For example, LUAF seeks to enjoin Colorado from challenging the validity of conservation easement tax credits where the conservation easement donor did not meet certain statutory requirements. LUAF also seeks to prevent Colorado from challenging the validity of the appraisals used to support the tax credits. A court order enjoining these challenges to tax credits would prevent Colorado from assessing and collecting income taxes based on invalid or overvalued tax credit claims. This would lower the amount of tax revenue that Colorado could collect.

The declaratory relief sought by LUAF would have a similar effect. LUAF seeks a declaration that Colorado has taken property without providing just compensation because Colorado rejected claims for conservation easement tax credits. Such a declaration would prevent Colorado from rejecting such claims in the future—effectively restraining the assessment and collection of taxes that were reduced by invalid conservation easement tax credits which should have been rejected. In sum, the declaratory and injunctive relief sought by LUAF would

prevent Colorado from collecting taxes that it would otherwise be entitled to. Consequently, the relief sought falls within the TIA's jurisdictional bar.

LUAF's arguments to the contrary are unavailing. LUAF contends that the Supreme Court's opinion in *Hibbs v. Winn* prevents the TIA from applying here. 542 U.S. 88. In *Hibbs*, Arizona law authorized income-tax credits for payments made to organizations that award scholarships and grants to children attending private schools. *Hibbs*, 542 U.S. at 92. The plaintiffs brought an Establishment Clause challenge seeking to prevent taxpayers from gaining the benefit of those tax credits. *Id.* In effect, this challenge sought to increase state tax revenue by challenging a tax credit that would have reduced taxes. Consequently, the Supreme Court held that the TIA did not apply because the plaintiffs did not seek to enjoin the "assessment, levy, or collection" of state taxes. *Id.* at 105–07. Unlike the plaintiffs in *Hibbs* who sought to increase state tax revenue, LUAF seeks to reduce Colorado's tax revenue by restraining or enjoining the State's ability to challenge conservation easement tax credits. Thus, *Hibbs* does not apply to our case. *Hill*, 478 F.3d at 1250 ("Our case . . . does not involve the somewhat unusual circumstance confronted by *Hibbs* of citizens seeking to eliminate tax credits and 'flog' the State to collect more tax revenues, but instead falls in the traditional heartland of TIA cases—an effort expressly aimed at preventing the State from exercising its sovereign power to collect certain revenues.").

LUAF further argues that *Hibbs* excuses our case from the TIA's jurisdictional barrier because LUAF is a third party that is not challenging its own tax liability.

6

But this court has already rejected a similar argument in *Hill v. Kemp*. 478 F.3d at 1249. There, we declared that "nothing in the language of the TIA indicates that our jurisdiction to hear challenges to state taxes can be turned like a spigot, off when brought by taxpayers challenging their own liabilities and on when brought by third parties challenging the liabilities of others." *Id.* Additionally, LUAF is not clearly a third party; it has standing in this case only because it brought claims on behalf of its taxpayer members.

Second, LUAF and its members have access to "a plain, speedy and efficient remedy" in Colorado state courts. Before declining federal jurisdiction under the TIA, federal courts must decide whether the state "affords a plain, speedy and efficient remedy in its courts for those seeking to challenge its taxes." *Hill*, 478 F.3d at 1253. The state court remedy need only meet "certain minimal procedural criteria." *Grace Brethren Church*, 457 U.S. at 411. The state meets these minimal criteria as long as it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Id.*

Here, Colorado courts provide a "plain, speedy and efficient remedy." Under Colorado's statutory scheme, if a conservation easement tax credit is denied, taxpayers can appeal the denial and receive an administrative hearing. Colo. Rev. Stat. §§ 39-22-522(3.5)(a), 39-21-103(3). Taxpayers can further appeal a negative ruling to a state district court for a de novo review, *id.* § 39-21-105(2)(b), and that district court's ruling is appealable to the Colorado Court of Appeals and ultimately

7

the Colorado Supreme Court, *id.* § 39-21-105(8)(a). Colorado thus provides an adequate remedy under the TIA. *See Grace Brethren Church*, 457 U.S. at 413–14 (holding an adequate remedy existed where plaintiffs could "file an action in Superior Court . . . raising all arguments against the validity of the tax" and, if unsuccessful, could appeal to higher state courts).

## B.

Principles of comity also support the district court's dismissal for lack of jurisdiction. The comity doctrine prevents federal courts from entertaining § 1983 claims for relief that "risk disrupting state tax administration." *Levin*, 560 U.S. at 417. Taxpayers bringing such claims for relief "must seek protection of their federal rights by state remedies, provided . . . that those remedies are plain, adequate, and complete." *McNary*, 454 U.S. at 116.

For the same reasons stated in the above TIA analysis, LUAF's claims "risk disrupting state tax administration," and Colorado's courts provide a "plain, adequate, and complete" remedy. Accordingly, the comity doctrine also supports the district court's dismissal for lack of jurisdiction.

## C.

LUAF argues that barring federal jurisdiction over its takings claim would conflict with the Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). In *Knick*, the Court overruled its prior decision that property owners must "seek just compensation under state law in state court before bringing a federal takings claim under § 1983." *Knick*, 139 S. Ct. at

2169 (overruling *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). *Knick* disagreed with *Williamson County*'s view "that a property owner does not have a ripe federal takings claim until he has unsuccessfully pursued an initial state law claim for just compensation." *Id.* at 2178. Instead, *Knick* concluded that a property owner has "an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 2167. Therefore, the property owner may bring his takings claim "in federal court under § 1983 at that time." *Id.* at 2168.

Contrary to LUAF's argument, *Knick* does not prevent the TIA and comity principles from barring federal jurisdiction here. First, our decision does not contradict *Knick*'s holding that a property owner may ordinarily bring a takings claim in federal court "as soon as a government takes his property for public use without paying for it." *Id.* at 2170. Instead, we hold only that the TIA and comity principles bar federal jurisdiction over claims, like LUAF's, that "risk disrupting state tax administration" where an adequate state remedy exists. *Levin*, 560 U.S. at 417.

Furthermore, our conclusion is not altered because a constitutional right is at issue. The Supreme Court has held that both the TIA and the comity doctrine bar federal jurisdiction over constitutional challenges to the administration of state tax laws. *McNary*, 454 U.S. at 105 (holding that comity barred federal jurisdiction where plaintiffs brought a § 1983 claim alleging that Missouri tax laws had deprived them of equal protection and due process of law); *Grace Brethren Church*, 457 U.S. at 408 (concluding "that the [TIA] also prohibits a district court from issuing a declaratory

9

judgment holding state tax laws unconstitutional" where plaintiffs allege a violation of the Establishment and Free Exercise Clauses of the First Amendment); *Levin*, 560 U.S. at 419 (holding that comity required plaintiffs' claim to proceed originally in state court where plaintiffs alleged "discriminatory taxation in violation of the Commerce and Equal Protection Clauses").

In *McNary*, the Court specifically weighed the jurisdictional barriers of comity and the TIA against the Court's precedent that "where § 1983 is involved, . . . a litigant challenging the constitutionality of any state action may proceed directly to federal court." *McNary*, 454 U.S. at 105. Weighing these competing considerations, *McNary* held that "the principle of comity controls" in a § 1983 challenge to the administration of state tax laws. *Id.* Accordingly, the plaintiffs were required to "seek protection of their federal [constitutional] rights by state remedies." *Id.* at 116.

Although none of these cases involved a takings claim like the one LUAF asserts, this is not a meaningful distinction because *Knick* sought to put takings claims on equal footing with "other constitutional claim[s] [] guaranteed a federal forum under § 1983." *Knick*, 139 S. Ct. at 2169–70 ("overruling *Williamson County* and restoring takings claims to the full-fledged constitutional status the Framers envisioned when they included the Clause among the other protections in the Bill of Rights"). Accordingly, we treat takings claims the same as other constitutional claims as they relate to the TIA and comity. *See Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298, 306 (4th Cir. 2000) (concluding that comity and the TIA

10

barred plaintiffs' takings claim from proceeding in federal court where the claim challenged a state tax).

## IV.

For these reasons, the TIA and comity principles prohibit the district court from exercising jurisdiction over LUAF's claims.  We therefore AFFIRM the district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Entered for the Court

Allison H. Eid
Circuit Judge

11